Approved: _____
DANIEL G. NESSIM / SHEB SWETT
Assistant United States Attorneys

Before:  THE HONORABLE JAMES L. COTT
         United States Magistrate Judge
         Southern District of New York

**21 MAG 4341**

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

LUIS TORIBIO,

    Defendant.

- - - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 1344 and 2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

    ANDREW PERRY, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
(Bank Fraud)

    1. From at least in or about 2017, up to and including at least in or about September 2020, in the Southern District of New York and elsewhere, LUIS TORIBIO, the defendant, did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TORIBIO operated a money-services business through various bank accounts while misrepresenting to the banks the nature of the business in those accounts.

    (Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, which has included, among other things, conversations with witnesses and other law enforcement agents, review of bank records and governmental databases, and surveillance conducted by law enforcement officers. It is also based on my training and experience in investigating financial crimes, including money laundering offenses. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

3. Since at least in or about 2017, LUIS TORIBIO, the defendant, has engaged in a scheme to defraud banks by operating a money-services business ("MSB") through a series of companies and bank accounts while misrepresenting the activity in these bank accounts to the banks.

4. New York law, New Jersey law, and federal law all require anyone operating an MSB to be licensed. A licensed MSB must, among other things, conduct various monitoring and reporting activities, such as the filing of currency transaction reports ("CTRs") and suspicious activity reports ("SARs").

5. Because of the nature of MSBs, many banks choose not to open accounts on behalf of MSBs. Those banks that do provide business accounts for MSBs subject these businesses to greater scrutiny. For example, a bank may review an MSB's license, visit to the place of business, or a review the MSB's compliance program.

6. TORIBIO has operated his MSB through various bank accounts and using various companies, many of which are not licensed to conduct this business. TORIBIO also operated this MSB through certain companies that TORIBIO did not own, but which he controlled or was able to use for his MSB. As set forth in greater detail below, TORIBIO conducted this business without disclosing to banks that these companies were engaged in an MSB. Had the banks known that these companies were engaged in an MSB, they would have performed additional due diligence or terminated the accounts.

7. At various times, banks conducting transactions on behalf of the TORIBIO MSB raised questions about the nature of these transactions. In response, TORIBIO instructed others to misrepresent the nature of these transactions so that the banks would approve the transactions.

8. As set forth in greater detail below, TORIBIO has moved millions of dollars as part of his MSB.

### Company-1

9. Based on my review of corporate records maintained by New York State, bank records, and other records, as well as conversations I have had with other law enforcement agents and witnesses, I have learned, among other things, the following:

   a. On or about October 27, 2016, Company-1 was registered in New York State and is still registered as an active corporation in New York State. A company wholly owned by TORIBIO ("Company-2") is listed as the entity that will accept service on behalf of Company-1.

   b. On or about January 6, 2017, an individual ("Individual-1") opened a bank account on behalf of Company-1 ("Company-1 Account") at the branch of a U.S. financial institution ("Bank-1") located in Manhattan, New York. Individual-1 was the sole signatory on the account. The listed address for Account-1 was an apartment on Fort Washington Avenue, in Manhattan, New York, which is associated with Individual-1.

   c. Beginning in January 2019, the pattern of activity in the Company-1 Account was consistent with the operation of an MSB. For example, between on or about January 1, 2019 and on or about August 31, 2020, the Company-1 Account engaged in the following transactions, among others, in furtherance of that business:

      i. The Company-1 Account engaged in a high volume of transactions. There were over 1,000 separate transactions in which the Company-1 Account either received money or sent out money, involving hundreds of counterparties. Indeed, between on or about January 1, 2019 and on or about August 31, 2020, the Company-1 Account received approximately $5,034,416.96 from over 100 separate entities and individuals. During that same time, the Company-1 Account sent out approximately $4,944,112.03 to approximately 175 entities and individuals.

3

    ii.  Outgoing payments were made to all types of companies, including import-export companies, cellphone companies, automobile companies, and textile companies. Further, the Company-1 Account received and sent money all around the world, including accounts located in Singapore, China, Italy, Panama, the Dominican Republic, and the UAE.

    iii.  The Company-1 Account sent and received large amounts of money from other accounts associated with TORIBIO and this scheme. For example, the Company-1 Account received approximately $80,900 from TORIBIO, and approximately $66,708 from an account associated with Company-2, which is wholly owned by TORIBIO. Furthermore, the Company-1 Account received approximately $425,025 from and sent approximately $95,000 to an account associated with another company TORIBIO owns ("Company-3"). See ¶ 11, infra. Finally, the Company-1 Account received approximately $102,524 from and sent approximately $25,000 to a company that TORIBIO used as part of the scheme ("Company-4"). See ¶ 12, infra.

    d.  Bank-1 considers MSBs high risk. Before opening an account for an MSB, Bank-1 will require additional documentation, including evidence of registration and an existing compliance program, and will conduct a site visit to the business location.

    e.  In or about November 2019, Bank-1 contacted Individual-1 to conduct a "Know Your Customer" inquiry relating to Company-1's wire activity and its relationship to Company-2. A Bank-1 representative spoke with Individual-1, who stated, in sum and substance, that Company-1 was a software development company and that Company-2 was a client that hired Company-1 for its software development services.

    f.  In a voluntary interview with law enforcement officers on September 10, 2020, LUIS TORIBIO, the defendant, stated, in sum and substance, that he was the owner of Company-1, and that Company-1 was a software development company that sold check inspector technology. However, in an affidavit LUIS TORIBIO, the defendant, signed on December 14, 2020 and filed in the Southern District of New York on December 15, 2020 (the "Toribio Affidavit"), TORIBIO, in his capacity as "Treasurer, but not an owner" of Company-1, stated that Company-1 acts as an "agent/delegate" of a licensed as an MSB by the State of New Jersey. The New Jersey Department of Banking and Finance has no record of Company-1 registering as an agent or delegate of a licensed MSB.

10. Based on a conversation I have had with Individual-1,[1] I have learned, among other things, the following:

  a. LUIS TORIBIO, the defendant, asked Individual-1 to open the Company-1 Account. TORIBIO provided Individual-1 with the name of Company-1. TORIBIO told Individual-1 that Company-1 was a software development company. Individual-1 agreed to open the Company-1 Account, and TORIBIO had two individuals accompany Individual-1 when Individual-1 opened the account.

  b. TORIBIO was responsible for all activity in the Company-1 Account. TORIBIO established an online account for the Company-1 Account, which TORIBIO used to conduct the domestic account activity. For international wires, TORIBIO would send the relevant information to Individual-1, who would then forward the information to Bank-1.

  c. In or about May 2020, Bank-1 froze the Company-1 Account. TORIBIO instructed Individual-1 to contact Bank-1 to attempt to unfreeze the account. Individual-1, at TORIBIO's direction, told Bank-1 that Company-1 was a software development company.

  d. TORIBIO paid Individual-1 approximately $300 each month for use of the Company-1 Account.

<u>Company-3</u>

11. Based on my review of corporate records maintained by New York State, bank records, and other records, as well as conversations I have had with other law enforcement agents and witnesses, I have learned, among other things, the following:

  a. On or about February 16, 2016, Company-3 was registered in New Jersey and is still registered as an active corporation in New Jersey. LUIS TORIBIO, the defendant, is listed as the "member/manager" and authorized representative of Company-3. Company-3's corporate purpose is listed as serving as a "Technology Wholesalers Reseller." A residential address in New Jersey has been provided as Company-3's business address and address for service of process ("Address-1"). Based on my review

---

[1] Individual-1 has not been charged with a crime, but has disclosed to law enforcement Individual-1's involvement in the conduct described herein in the hopes of obtaining leniency with respect to Individual-1's criminal liability. The information Individual-1 has provided has been deemed reliable and corroborated by independent sources.

5

of law enforcement databases compiling property records, I have learned that TORIBIO is the owner of Address-1.

  b. On or about July 24, 2019, TORIBIO opened an account for Company-3 (the "Company-3 Account") at a branch of a U.S. financial institution ("Bank-2") in New Jersey. Among other documents, TORIBIO provided a "Certificate of Formation" in which Company-3 was described as a "Technology Wholesalers Reseller."

  c. At the account opening, TORIBIO represented to employees of Bank-2 that the Company-3 Account would be used on behalf of a technology business. TORIBIO showed an employee of Bank-2 an example of a cellphone application that was part of Company-3's business. At no point did TORIBIO disclose that Company-3 would engage in an MSB. Such disclosure would have triggered additional scrutiny under Bank-2's internal policies.

  d. The pattern of activity in the Company-3 Account was consistent with the operation of an MSB. For example, between on or about July 24, 2019 and on or about February 23, 2020, The Company-3 Account engaged in the following transactions, among others, in furtherance of that business:

    i. The Company-3 Account engaged in a high volume of transactions with a large number of counterparties. There were hundreds of separate transactions in which The Company-3 Account either received money or sent out money, involving dozens of counterparties. During this time period, The Company-3 Account received deposits of approximately $2.65 million. These deposits were almost always large, round dollar amounts from both domestic and international counterparties. These deposits were often followed by checks drafted on the account. During this time period The Company-3 Account also transferred out approximately $2.38 million. This volume of incoming, and outgoing transactions reflects the operation of an MSB, rather than a "Technology Wholesalers Reseller."

    ii. The counterparties to these transactions were located both throughout the United States as well as overseas. For example, The Company-3 Account sent money to or received money from accounts located in the Dominican Republic and Panama, among other locations.

  g. On or about August 21, 2020, Company-3 registered with FinCEN as an MSB. The Toribio Affidavit states, in sum and substance, that Company-3 is an authorized agent/delegate for a licensed money-transmitting business in New Jersey. The New Jersey

6

Department of Banking and Finance has no record of Company-3 registering as an agent or delegate of a licensed MSB.

## Company-4

12. Based on my review of bank records and other documents, as well as my conversation with an individual with knowledge of the facts described herein ("Individual-2"), I have learned, among other things, the following:[2]

    a. In or about 2016, Individual-1 introduced Individual-2 to LUIS TORIBIO, the defendant. TORIBIO prepared the formation paperwork for Company-4, a clothing embroidery company, which was wholly owned by Indiviudal-2. TORIBIO also prepared tax returns for Company-4 and allowed Company-4 to operate at TORIBIO's office space in the Bronx, New York.

    b. Company-4 maintained bank accounts at three separate U.S. financial institutions (collectively, the "Company-4 Banks"). Individual-2 gave TORIBIO access to Company-4's bank accounts, including online access, to assist with the bookkeeping for Company-4.

    c. Beginning in late 2017, TORIBIO began using Company-4 bank accounts to move money on behalf of his money-services business. When the Company-4 Banks inquired as to the nature of these transactions, TORIBIO both instructed Individual-2 to misrepresent the nature of these transactions and provided false invoices, which Individual-2 provided to the Company-4 Banks. For example:

        i. On or about October 8, 2019, the Company-1 Account sent approximately $25,000 to a Company-4 bank account. The following day, Individual-2 contacted TORIBIO, noting that the bank had called asking about the transfer. In a voice message, TORIBIO responded that it was for materials that had been sent. The following day, the Company-4 bank account wired approximately $23,069 to a Panamanian bank. The reference note stated "Invoice Payment."

---

[2] I have spoken with Individual-2 in the course of this investigation. Individual-2 has not been charged with a crime, but has disclosed to law enforcement Individual-2's involvement in the conduct described herein in the hopes of obtaining leniency with respect to Individual-2's criminal liability. The information Individual-2 has provided has been deemed reliable and corroborated by independent sources.

7

          ii. In 2019, TORIBIO transferred a large amount of money from a Company-4 bank account to an account in China. The bank blocked this transaction for approximately one month, but TORIBIO provided Individual-2 with a fake invoice on Company-4 letterhead purportedly justifying the expense. Individual-2 submitted that invoice to the bank, at which point the transaction was unblocked.

          iii. On or about December 6, 2019, a Company-4 bank account received approximately $36,820 from a purported metal company ("Company-5"). On or about December 10, 2019, Company-5 sent approximately $58,400 to a Company-4 bank account. That same day, the Company-4 bank account wired approximately $18,300 to a communications company located in Doral, Florida. Individual-2 then sent TORIBIO a message asking what Individual-2 should say if the bank asked about the transfer, and TORIBIO responded, "FOR MARKETING." Individual-2 later confirmed to TORIBIO that Individual-2 told the bank the $18,300 payment was for marketing.

    WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of LUIS TORIBIO, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Andrew Perry with permission JLC
Special Agent Andrew Perry
Drug Enforcement Administration

Sworn to before me this
21st day of April, 2021

_____
JAMES L. COTT
United States Magistrate Judge

8